# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 24-3098** **September Term, 2025**

FILED ON: MARCH 10, 2026

UNITED STATES OF AMERICA,
APPELLEE

v.

CALVIN SMITH, ALSO KNOWN AS A-SAY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:00-cr-00157-14)

Before: MILLETT and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*

## JUDGMENT

This appeal was presented to the court and briefed and argued by counsel. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion, *see* FED. R. APP. P. 36; D.C. CIR. R. 36(d), and it is now:

**ORDERED** and **ADJUDGED** that sentences imposed on Counts 1 and 3 by the district court on July 15, 2024, and the conviction on Count 20, be **VACATED**, and that the case be remanded to the district court for a new sentencing.

* * *

In 2003, a jury convicted Calvin Smith of two counts of conspiracy and five counts of murder. At sentencing, the district court imposed seven concurrent sentences: three life sentences and four sentences of 25 years to life. Mr. Smith appealed, and this court held that he had raised a colorable claim of ineffective assistance of counsel as to two of those murder counts. After a ten-year delay, the district court held an evidentiary hearing, concluded that trial counsel had been constitutionally inadequate in a manner that prejudicially affected the two murder counts, and vacated both of those convictions.

The district court then held a new sentencing hearing for Mr. Smith. At that hearing, Mr. Smith argued for a downward variance from the proposed Sentencing Guidelines range based, among other things, on his youth at the time of his offenses and his extensive rehabilitation during the 30 years he had already served in prison. The district court rejected these mitigation arguments and imposed two concurrent life sentences and three sentences of 25 years to life on the remaining counts.

We vacate Mr. Smith's life sentence for conspiracy to distribute controlled substances because that sentence undisputedly exceeded the statutory maximum permitted for the offense. We also vacate the life sentence imposed for conspiracy to participate in a racketeering organization because the district court failed to make the factual findings required to impose that sentence. In addition, with the parties' agreement, we vacate on double jeopardy grounds Mr. Smith's conviction for the first-degree felony murder of Eric Moore. We remand for a new sentencing hearing.

## I

### A

#### 1

This case began in November 2000 when a federal grand jury returned a 158-count indictment against sixteen defendants that involved an underlying "consp[iracy] to run a large-scale and violent narcotics-distribution business centered in Washington, D.C." *United States v. McGill*, 815 F.3d 846, 861 (D.C. Cir. 2016). Appellant Calvin Smith was the youngest of the defendants at his trial, having joined the conspiracy as a minor and committed all of the charged offenses when he was a teenager.

After a ten-month trial, a jury convicted Mr. Smith of seven counts:

- conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841, 846 (Count 1);
- Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, in violation of 18 U.S.C. §§ 1962(d), 1963 (Count 3);
- first-degree murder while armed of Anthony Dent, in violation of D.C. Code §§ 22-105, -2401, -3202 (1996) (Count 4);
- Continuing Criminal Enterprise murder of Mr. Dent, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 848(e)(1)(A) (Count 5);
- first-degree murder while armed of Henry Lloyd, Jr., in violation of D.C. Code §§ 22-105, -2401, -3202 (1996) (Count 15);
- first-degree murder while armed of Eric Moore, in violation of D.C. Code §§ 22-105, -2401, -3202 (1996) (Count 19); and

- first-degree felony murder while armed of Mr. Moore, in violation of D.C. Code §§ 22-105, -1801, -2401, -3202 (1996) (Count 20).

The jury acquitted Mr. Smith of the Continuing Criminal Enterprise murder of Mr. Lloyd, Jr.

The district court sentenced Mr. Smith to life imprisonment for each of his federal convictions, and to 25 years to life for each of his D.C. Code violations, all counts to be served concurrently.

**2**

Mr. Smith appealed, and this court affirmed in part and vacated in part. *See United States v. Moore*, 651 F.3d 30, 102 (D.C. Cir. 2011). Of relevance here, this court affirmed most of Mr. Smith's convictions, *id.*, but we remanded the two counts involving the murder of Mr. Dent for an evidentiary hearing to determine whether Mr. Smith's counsel had rendered unconstitutionally ineffective assistance of counsel in promising the jury that he would call an exculpatory witness, Leo Benbow, and then failing to do so, *id.* at 85–89.

Mr. Smith appealed to the Supreme Court, which granted certiorari and affirmed on an issue unrelated to this appeal. *See Smith v. United States*, 568 U.S. 106 (2013).

After a troublingly long, ten-year delay, the district court held Mr. Smith's evidentiary hearing in 2023. Unfortunately, six years after this court's remand for a hearing on the effectiveness of trial counsel, Mr. Smith's key witness, Mr. Benbow, suffered an accident that left him with "brain * * * problems," J.A. 322, to the point that he "sometimes * * * forget[s] who my name is, what my name is[,]" J.A. 317. As a result, he was unable to testify—exculpatorily for Mr. Smith or otherwise—about the murder of Mr. Dent. *See* J.A. 316.

The district court held that Mr. Smith's counsel had been unconstitutionally ineffective. The court explained that "defense counsel's decision to base the Dent murder defense around Benbow[,]" to promise him to the jury as an exculpatory witness, and then to fail to call him was constitutionally inadequate performance. J.A. 632. As for prejudice, the court observed that "[t]he contrast between Mr. Smith's [counsel's] thin narrative and the government's otherwise middling evidence could not have been lost on the jury[.]" J.A. 641. As a result, absent counsel's deficient performance, "there [was] a reasonable probability the members of the jury would not have credited the government's evidence as establishing Mr. Smith's guilt beyond a reasonable doubt." J.A. 641.

The district court then vacated Mr. Smith's two convictions arising from the death of Mr. Dent and instructed the Probation Office to update Mr. Smith's Presentence Investigation Report ("PSR") and to recalculate Mr. Smith's Guidelines sentence.[1]

---

[1] When the district court vacated Mr. Smith's convictions for the murder of Mr. Dent, the jury finding that the murder qualified as a racketeering act necessarily fell as well, as the district court's instructions to the jury required. *See* Trial Tr. for Dec. 9, 2002, at 98–99, Dkt. No. 1189 (instructing the jury that any finding of a racketeering act must rise or fall with the jury's decision as to whether the defendant committed

### B

One year later, the district court held a new sentencing hearing for Mr. Smith. At the hearing, Mr. Smith's counsel urged the court to impose a much lower sentence based on his youth when committing the crimes, his extensive rehabilitation while in prison, and his low risk of recidivism. Even though incarcerated for life, Mr. Smith explained that he had "made a decision to do everything possible to better [himself] as a person and do everything and use every available opportunity that was available to [him] in the [Bureau of Prisons] to educate [himself.]" J.A. 991. To that end, he taught himself how to read and write, earned his GED, pursued "an incredible amount of programming, the most rigorous programming," J.A. 984, and became a leader and mentor to other inmates, including by serving on the inmate advisory board. Numerous letters submitted to the court attested to Mr. Smith's exceptional leadership and mentoring, as well as his contributions to violence interruption within the prison. *See, e.g.*, J.A. 738 ("[Mr. Smith] wasn't there just for me, but for countless others too, especially the young men that needed assistance and guidance. He helped me to redirect my life in a productive manner[.]"); J.A. 742 ("I can confidently say that [Mr. Smith] is one of the most exceptional mentors I have ever encountered."); J.A. 744 ("I've been on the same housing unit with Mr. Smith for over two years, and he has made a major impact on my life over the years. He's helped me see past a lot of the negative thinking that was on my mind."); J.A. 751 ("Mr. [S]mith was an inmate that the warden used to come get to stop the violence in the institution."). At the hearing, Mr. Smith also expressed deep remorse to the families that "lost loved ones in this case[.]" J.A. 990.

Mr. Smith also pressed three legal objections to the Probation Office's updated PSR. First, he noted that the PSR had incorrectly recited a statutory maximum of life for his drug conspiracy conviction. Based on the jury's drug weight findings, the correct statutory maximum was 40 years. *See* J.A. 945 (citing 21 U.S.C. § 841(b)(1)(B)). The government did not dispute this. Second, Mr. Smith contended that sentencing him for both the first-degree murder and the first-degree felony murder of Mr. Moore would violate the Double Jeopardy Clause of the United States Constitution, an argument with which the government agreed. Third, Mr. Smith argued that, given his acquittal of the counts arising from the murder of Mr. Dent, "neither the presentence investigation report nor the guidelines calculation should include the Dent murder[,]" and "that's not something that the Court should rely upon today in sentencing[.]" J.A. 946.

The district court rejected all three arguments. The court agreed that the jury's verdict on drug weight made Mr. Smith "eligible on this count for a term of imprisonment of 5 to 40 years * * * rather than a sentence of 10 years to life[.]" J.A. 947. But the court declined to "alter its prior sentence on this count" because "the D.C. Circuit affirmed Mr. Smith's conviction on this count," J.A. 947–948; "neither the government nor the defense raised an objection to it when the original PSR was prepared in 2004[,]" J.A. 948; and "Mr. Smith has multiple other convictions that call for life sentences," J.A. 948.

---

the substantive offense or not).

Turning to Mr. Smith's double jeopardy objection, the court recognized its ability to correct plain errors committed at the initial sentencing. But the court concluded that any error on the overlapping counts was not plain because "[t]he case has been ongoing for decades, and the double jeopardy issue was just raised a month ago." J.A. 947.

As for the court's consideration of Mr. Dent's murder, the court insisted that "courts may consider uncharged and acquitted conduct during sentencing[.]" J.A. 948 (citing *United States v. Watts*, 519 U.S. 148, 156–157 (1997)).

Lastly, the district court acknowledged "Mr. Smith's rehabilitation, good behavior, and leadership in prison" as mitigating factors. J.A. 993. But the court rejected Mr. Smith's request for a downward variance due to both the gravity of Mr. Smith's offenses, J.A. 993, and the presence of multiple convictions "any one of which would be sufficient on its own to sustain a life sentence[,]" J.A. 994. The court then imposed concurrent sentences of life imprisonment for drug conspiracy and RICO conspiracy, as well as sentences of 25 years to life for the first-degree murder while armed of Mr. Lloyd, Jr., the first-degree murder while armed of Mr. Moore, and the first-degree felony murder while armed of Mr. Moore.

Mr. Smith timely appealed his sentence.

## II

We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

We review preserved challenges to sentencing determinations for an abuse of discretion, *see United States v. Locke*, 664 F.3d 353, 356 (D.C. Cir. 2011), and decide "purely legal questions *de novo*," *United States v. Saani*, 650 F.3d 761, 765 (D.C. Cir. 2011).

If a defendant fails to preserve an objection before the district court, we review for plain error. *United States v. Law*, 806 F.3d 1103, 1105 (D.C. Cir. 2015). To prevail, the appellant must show both that the district court committed an obvious error and "a reasonable likelihood that the sentencing court's plain error affected his sentence." *United States v. Bigley*, 786 F.3d 11, 15 (D.C. Cir. 2015) (internal quotation marks omitted). In addition, the defendant must show that the error "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Iracks*, 106 F.4th 61, 66 (D.C. Cir. 2024) (internal quotation marks omitted). This final factor is "ordinarily satisfied where the error, 'if left uncorrected, would result in the defendant serving a longer sentence.'" *United States v. King-Gore*, 875 F.3d 1141, 1147 (D.C. Cir. 2017) (quoting *In re Sealed Case*, 573 F.3d 844, 853 (D.C. Cir. 2009)).

## III

On appeal, Mr. Smith presses the same legal arguments he raised below: The drug conspiracy sentence exceeds the statutory maximum; his convictions for both the first-degree murder and first-degree felony murder of Mr. Moore violate the Double Jeopardy Clause; and the

district court erred by relying on the murder of Mr. Dent at sentencing without making the required factual findings.

Mr. Smith is correct on all three grounds. We vacate Mr. Smith's conviction for the first-degree felony murder while armed of Mr. Moore; we vacate his life sentences for drug conspiracy and RICO conspiracy; and we remand for a new sentencing. Because of those rulings, this court need not reach Mr. Smith's other procedural challenges to the sentencing proceeding.

**A**

The lawfully permitted sentence for Mr. Smith's conviction for conspiracy to distribute and possess with intent to distribute controlled substances, 21 U.S.C. §§ 841, 846, depends on the quantity of drugs found by the jury*, see id.* § 841. The jury determined that Mr. Smith was responsible for (i) at least 500 grams but less than 5 kilograms of mixtures and substances containing a detectable amount of cocaine, (ii) at least 5 grams but less than 50 grams of mixtures and substances containing a detectable amount of "cocaine base[,]" and (iii) less than 100 grams of mixtures and substances containing a detectable amount of heroin. J.A. 138–139. Those drug amounts made Mr. Smith eligible for a sentence of five to forty years' imprisonment. 21 U.S.C. § 841(b)(1)(B). As the government agrees, *see* Gov't Br. 57–59, the district court's imposition of a life sentence exceeded what the statute allows.

The district court recognized that Mr. Smith could not lawfully be sentenced to more than 40 years of imprisonment for drug conspiracy, but it imposed a life sentence anyway. The court reasoned that this court had "affirmed Mr. Smith's conviction on" the relevant count, and "neither the government nor the defense raised an objection to [the sentence] when the original PSR was prepared in 2004." J.A. 947–948. The court added that, in any event, "Mr. Smith has multiple other convictions that call for life sentences[.]" J.A. 948.

None of these reasons support the unlawful sentence.

First, this court's prior affirmance of Mr. Smith's *conviction* has no bearing on the lawfulness of his *sentence*, which has not previously been reviewed by this court.

Second, the failure of Mr. Smith's counsel to object to a plainly unlawful sentence twenty years ago is beside the point. The error we are reviewing is the district court's new decision at the 2024 resentencing to impose a life sentence for the drug-trafficking conviction, over Mr. Smith's express objection, *see* J.A. 945, and after rejecting Mr. Smith's argument for a downward variance in his sentence, *see* J.A. 992–994. That Mr. Smith might face life sentences for other convictions is no license for the court to cast aside an express statutory limit on the length of a sentence for a different conviction.

In any event, the whole point of plain error review is for the district court to consider those arguments that were not properly preserved by counsel, so prior counsel's failure to press the

argument at the original sentencing is irrelevant. *See United States v. Whren*, 111 F.3d 956, 960 (D.C. Cir. 1997).

We therefore vacate Mr. Smith's sentence for conspiracy to distribute and possess with intent to distribute controlled substances, and remand for resentencing.

**B**

Mr. Smith argues that his convictions and separate sentences for both the first-degree murder and the first-degree felony murder of Mr. Moore violate the Double Jeopardy Clause of the Fifth Amendment. *See* Smith Opening Br. 58–60. The government agrees and requests that this court vacate the first-degree felony murder conviction. *See* Gov't Br. 59. We agree as well, given longstanding precedent forbidding such a double-counted conviction.[2]

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." *United States v. Little*, 123 F.4th 1360, 1365 (D.C. Cir. 2024) (quotation marks omitted). To determine whether two convictions punish the "same offense," we scrutinize the underlying statutes. In cases that involve punishments for non-federal-law offenses, we defer to the highest state court's interpretation of its statute. Here, that means that this court "aim[s] 'to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case.'" *United States v. Johnson*, 4 F.4th 116, 120 (D.C. Cir. 2021) (quoting *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006)); *see id.* ("[I]t is the province [of] the D.C. Court of Appeals to determine the meaning of D.C. Code provisions.").

Mr. Smith's convictions for the first-degree murder of Mr. Moore and for the first-degree felony murder of Mr. Moore are both violations of the identical provision of District of Columbia law, D.C. Code § 22-2401. More to the point, the D.C. Court of Appeals has held that, under D.C. Code § 22-2401, first-degree murder and first-degree felony murder are the same offense. *Byrd v. United States*, 510 A.2d 1035, 1036 (D.C. 1986) (en banc); *see also Thacker v. United States*, 599 A.2d 52, 63 (D.C. 1991) (D.C. law bars "convict[ions] of both first-degree premeditated murder and first-degree felony murder of the same victim.").

That resolves the double jeopardy question, and the government does not argue otherwise. Given that longstanding precedent, Mr. Smith's convictions for both the first-degree murder and first-degree felony murder of Mr. Moore plainly violated the Double Jeopardy Clause. *Cf. Moore*, 651 F.3d at 81 ("[T]he government and [co-defendant Rodney] Moore agree that Moore's convictions for the felony murder and the premeditated murder of Ronald Powell merge.").

---

[2] The government suggests that Mr. Smith preserved the double jeopardy objection at his initial sentencing. *See* Gov't Br. 59 n.19. Mr. Smith does not address the appropriate standard of review for this claim. *See* Smith Opening Br. 58–60. Because Mr. Smith's argument prevails even on plain error review, we need not address whether counsel's comments at sentencing were sufficient to preserve this issue.

This plain error also affects Mr. Smith's "substantial rights," FED. R. CRIM. P. 52(b), and "seriously affects the fairness, integrity, or public reputation of judicial proceedings[,]" *Iracks*, 106 F.4th at 66 (internal quotation marks omitted). Because each of Mr. Smith's convictions carries a special assessment, the erroneous conviction "amount[s] to a second" and separate punishment. *Rutledge v. United States*, 517 U.S. 292, 301 (1996); *cf. United States v. Flores*, 995 F.3d 214, 225 (D.C. Cir. 2021) (holding that erroneous convictions constituted plain error even if they did "not affect the length of the current sentence").

In rejecting Mr. Smith's double jeopardy objection, the district court doubted its authority to correct the error because Mr. Smith had not raised the objection in earlier proceedings. *See* J.A. 946–947. To be sure, this court generally limits the scope of resentencing occasioned by a remand. Absent instructions to the contrary, a district court "may consider * * * such new arguments or new facts as are made newly relevant by the [remanding court's] decision[,]" *Whren*, 111 F.3d at 960, or by intervening legal developments, *see United States v. Melgar-Hernandez*, 832 F.3d 261, 269–270 (D.C. Cir. 2016). The district court can also "consider facts that did not exist at the time of the original sentencing[,]" *United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013), such as the extent of the defendant's post-sentencing rehabilitation efforts, *see United States v. Rhodes*, 145 F.3d 1375, 1377–1378 (D.C. Cir. 1998).

But those limitations do not constrain a district court's ability to correct plain error. *Whren*, 111 F.3d at 960. Because the double jeopardy error was plain, the district court could have corrected it at resentencing.

For those reasons, we vacate Mr. Smith's conviction on Count 20 for the first-degree felony murder while armed of Mr. Moore.

**C**

Mr. Smith next argues that the district court impermissibly relied on the murder of Mr. Dent, for which Mr. Smith had been acquitted, without the required factual findings needed to factor that conduct into his sentence. *See* Smith Opening Br. 53–54. Because Mr. Smith raised this objection below, *see* J.A. 946, we review for abuse of discretion, *see Locke*, 664 F.3d at 356.

Under 18 U.S.C. § 1963, RICO conspiracy ordinarily carries a maximum sentence of twenty years. 18 U.S.C. § 1963(a). A life sentence for RICO conspiracy may be imposed only "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment[.]" *Id.*

Although the district court vacated Mr. Smith's convictions for the murder of Anthony Dent on ineffective-assistance grounds, at resentencing, the court insisted, over Mr. Smith's objection, that it nevertheless could rely on the murder of Mr. Dent to increase Mr. Smith's sentence. *See* J.A. 948 (While "the defense objects to the Court's continued consideration of the murder on the grounds that the conviction for this murder was vacated[,] * * * [i]t is well-established * * * that courts may consider uncharged and acquitted conduct during sentencing[.]").

But a sentencing court "may base a sentence on acquitted conduct" only if (1) the sentence "is based on conduct established by a preponderance of the evidence," and (2) "the sentence does not exceed the statutory maximum[.]" *United States v. Bell*, 795 F.3d 88, 105 (D.C. Cir. 2015); *see United States v. Jones*, 744 F.3d 1362, 1369 (D.C. Cir. 2014). The district court here never found by a preponderance of the evidence that Mr. Smith was involved in the murder of Mr. Dent, yet still considered conduct underlying the murder when setting Mr. Smith's sentence. That failure is reversible error, as the government acknowledged at oral argument. *See* Oral Argument Transcript at 23 (Gov't counsel: "[The district court] did not make a specific [preponderance] finding."); *id.* at 24 (Court: "Is that a plain error?" Gov't counsel: "I believe [the district court] would -- I believe [the district court] would need to say that[.]"); *see also*, *e.g.*, *Bell*, 795 F.3d at 105; *United States v. Mohammed*, 89 F.4th 158, 165 (D.C. Cir. 2023) ("If a court may use the preponderance standard to find and rely on acquitted and untried conduct at sentencing, it follows that the same standard applies for conduct that was the subject of a vacated conviction."); *cf. United States v. Fields*, 251 F.3d 1041, 1046 (D.C. Cir. 2001) (holding that, absent a "clear finding" by the district court, this court could not determine the "basis for the life sentences on the RICO conspiracy count and [would] not permit [its] result to be guided by idle speculation as to the sentence that might be imposed by the district court on remand") (formatting modified).

The government argues that this court effectively made a preponderance finding in *United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011), when we held that the record contained sufficient evidence for a jury to convict Mr. Smith of Mr. Dent's murder, *id.* at 83. *See* Gov't Br. 56.

Not so. In conducting a sufficiency analysis, this court viewed the evidence in the light most favorable to the jury's verdict. *See Moore*, 651 F.3d at 84; *see also United States v. Brown*, 125 F.4th 1186, 1195 (D.C. Cir. 2025). By contrast, if the district court wished to rely on the murder of Mr. Dent at sentencing, the district court would need to weigh all the record evidence and make factual findings by a preponderance of the evidence, while also setting aside evidence tainted by counsel's ineffectiveness with respect to the murder of Mr. Dent. *See Moore*, 651 F.3d at 88 (observing that Mr. Benbow's testimony could have been "exculpatory of Smith" if, for instance, "Benbow saw three men simultaneously shoot at Dent, none of them Smith, and * * * Benbow was in a position to confirm that Smith was not standing in the alley."); *see also* J.A. 641 (district court characterizing the government's evidence regarding Mr. Smith's role in Mr. Dent's murder as "middling").

Because the district court did not make the required preponderance finding, we must vacate Mr. Smith's sentence for RICO conspiracy and remand for resentencing.[3]

[3] We note that the Guidelines now generally prohibit the use of acquitted conduct in determining the Guidelines range. U.S. Sent'g Guidelines Manual § 1B1.3(c) (U.S. Sent'g Comm'n 2024) ("Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction.").

* * * * *

In remanding for resentencing, we note that the above errors may have affected the court's sentencing decisions more broadly. Specifically, in rejecting Mr. Smith's extensive mitigation evidence, the district court relied, among other things, on its conclusion that Mr. Smith faced multiple life sentences. J.A. 994. But that assumption was incorrect. As explained above, Mr. Smith's drug conspiracy conviction does not allow for a life sentence, and the sentences for his three D.C. Code convictions—one of which we have now vacated—are 25 years to life, not life. In addition, the RICO-conspiracy life sentence has been vacated and remanded for resentencing. As a result, on remand, the district court will be able to reconsider Mr. Smith's mitigation arguments within a corrected sentencing framework.

Mr. Smith also raises a number of procedural challenges to the district court's conduct at the resentencing proceeding. Because we have vacated three of Mr. Smith's five convictions and remanded for a new sentencing hearing consistent with this opinion, we need not reach those procedural objections.

## IV

Lastly, Mr. Smith urges this court to reassign this case to another judge on remand. *See* Smith Opening Br. 60–62. Because Mr. Smith has not satisfied this court's high standard for reassignment, we deny this request.

In weighing reassignment, we consider whether (i) the district court judge "would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind the previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected[;]" (ii) "reassignment is advisable to preserve the appearance of justice[;]" and (iii) "reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997) (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc) (per curiam)). In weighing those factors, this court will reassign a case "only in the exceedingly rare circumstance that a district judge's conduct is 'so extreme as to display clear inability to render fair judgment.'" *In re Kellogg Brown & Root*, 756 F.3d 754, 763 (D.C. Cir. 2014) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

The record in this case does not show that the district court would be unable to put out of his mind previously expressed, erroneous views or findings. *Contrast Robin*, 553 F.2d at 10; *United States v. Trimm*, 999 F.3d 119, 129–130 (2d Cir. 2021) (Reassignment is appropriate where "the district court has clearly expressed the view on two separate occasions that a sentence below the mandatory minimum is necessary[,]" and twice failed to follow circuit precedent.) (quotation marks omitted).

Neither has the district court flouted this court's remand instructions. *Contrast United States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2008) (reassigning case when district court violated mandate

rule). Quite the opposite, a number of the district court's errors seem to have sprung, at least in part, from a good-faith misunderstanding of the mandate rule and a good-faith desire to *avoid* crossing lines this court has drawn.

Lastly, while we do not reach the merits of all of Mr. Smith's procedural challenges to his sentencing, they do not, either individually or collectively, tip the scale in favor of reassignment.

First, Mr. Smith contends that the district court "fail[ed] to consider all of the § 3553(a) factors and make an individualized determination as to a sentence for Smith[.]" Smith Opening Br. 61–62. But the record indicates that the court took note of Mr. Smith's mitigation evidence, *see* J.A. 992–993, and offered as a "reasoned basis" for remaining within the Guidelines "the gravity of Mr. Smith's offenses[,]" J.A. 993; *see United States v. Pyles*, 862 F.3d 82, 88 (D.C. Cir. 2017).

Second, Mr. Smith points to the district court's stray remarks about youthful offenders and carjackings. *See* Smith Opening Br. 48. But there is no indication that the court relied on any personal views in imposing sentence. *Contrast* J.A. 992–994, *with United States v. Cossey*, 632 F.3d 82, 87–88 (2d Cir. 2011) (The sentencing judge in a pedophilia case plainly erred by resting his sentence *entirely* on an "unsupported belief" that the defendant would "return to viewing child pornography, because of an as-of-yet undiscovered gene[.]").

Third, the district court did not "impermissibly punish[] Smith for exercising his rights to remain silent and to a jury trial[,]" Smith Reply Br. 22, by noting that "Mr. Smith * * * failed to demonstrate at the time of his [original] sentencing sincere remorse and personal accountability," J.A. 993. As this court recently reaffirmed, "[i]t is not unconstitutional * * * for a judge to show less leniency to a defendant who acknowledges guilt only after conviction than to 'an otherwise identical defendant who showed greater acceptance of responsibility by acknowledging his guilt at an earlier stage.'" *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (quoting *United States v. Jones*, 997 F.2d 1475, 1477 (D.C. Cir. 1993)).

To be sure, this court is troubled by the exceptional delay in providing a timely ineffectiveness hearing, which should have occurred long before Mr. Smith's key witness got in an accident and suffered consequential brain damage and memory loss. Such delay can impair both the reality and the appearance of fairness. At the same time, the district court judge is a highly experienced and distinguished jurist who is fully familiar with the extensive record in this case. We have every confidence that the district court will act expeditiously and fairly in resentencing Mr. Smith.

## V

For the foregoing reasons, we vacate Mr. Smith's sentence for drug conspiracy (Count 1) and RICO conspiracy (Count 3), and we vacate his conviction for the first-degree felony murder while armed of Mr. Moore (Count 20). We remand for a prompt resentencing.

* * *

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk